UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 25-23-DLB-CJS

STEVEN F. O'HARA                                                      PLAINTIFF

v.                   **MEMORANDUM OPINION AND ORDER**

DANIEL P. DRISCOLL                                       DEFENDANT

\*\*\* \*\*\* \*\*\* \*\*\*

**I.   INTRODUCTION**

This matter is before the Court upon Defendant Daniel P. Driscoll's Motion to Dismiss. (Doc. # 12). Plaintiff Steven F. O'Hara filed a Response on June 18, 2025 (Doc. # 13), and Defendant filed a Reply on July 2, 2025. (Doc. # 14). Thus, the Motion is now ripe for the Court's review. For the following reasons, Defendant's Motion to Dismiss is **granted**.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of the 2020 COVID-19 public health emergency ("the pandemic"). In response to the onset of the pandemic, in September 2021, President Biden issued Executive Order 14043 ("the vaccine mandate"), which required federal employees to get the COVID-19 vaccine. (Doc. # 12-1 at 3–4). While the vaccine mandate was broad-sweeping in nature, the federal government allowed employees to seek exemptions if they could not receive the vaccine for religious or medical reasons. (*Id*. at 4). Employees who sought exemptions were not subject to discipline for failing to comply with the vaccine mandate, but they were required to comply with the government's

1

guidelines for unvaccinated individuals—namely limitations involving masking, physical distancing, and traveling. (*Id.*). In January 2022, a district court in the Southern District of Texas issued a nationwide injunction prohibiting enforcement of the vaccine mandate, at which point the federal government temporarily ceased its enforcement of the vaccine mandate. (*Id.* at 5). The Department of Defense revised its COVID-19 policies in January 2023 to remove any vaccine requirements among its employees. (*Id.* at 5).

Plaintiff Steven O'Hara is a civil engineer with the Army Corps of Engineers ("the Corps") in its Great Lakes and Ohio River division, located in Cincinnati, Ohio. (Doc. # 1 ¶ 4; *see also* Doc. # 12-2). Plaintiff identifies as a Roman Catholic who is fundamentally opposed to abortion. (Doc. # 1 ¶ 7). At all points relevant to this action, Plaintiff was an employee with the Corps, which is run by the United States Department of Defense as the military engineering branch of the United States Army.[1] (Doc. # 12 at 1; Doc. # 13-1 at 1).

Plaintiff was employed by the Corps when President Biden issued the vaccine mandate in September 2021. (*Id.* at 5; *see also* Doc. # 1 ¶ 11). In October 2021, Plaintiff submitted a request for a religious exemption to the vaccine mandate, citing his Roman Catholic beliefs and his opposition to abortion as his grounds for exemption. (Doc. # 1 ¶ 11–12; Doc. # 12-1 at 5). Plaintiff claimed the COVID-19 vaccine was made from cells of aborted fetuses, which made them "morally compromised" for Catholics like himself who are against abortion. (Doc. # 12-3 at 1–3). He stated that the government's forcing him to take the vaccine was "unethical, inhuman, illegal, and in violation of [his] Catholic faith." (*Id.* at 3).

---

[1]    Plaintiff is currently on administrative leave through December 31, 2025 as part of the Office of Personnel Management's Deferred Resignation Program. (Doc. # 12-2 at 3).

2

Plaintiff claims his exemption request was "ignored" and "never considered,"[2] leading him to email his supervisor, Ernest Drott, to follow up on his request. (Doc. # 12 at 6). After a series of emails, Plaintiff had a meeting on April 27, 2022 with Drott and Tracy Baker, his division's Equal Employment Office Manager, to discuss his request for religious accommodation.[3] (Doc. # 12-3 at 10). Following the meeting, on May 12, 2022, Drott informed Plaintiff that his accommodation request was denied because Plaintiff had not shown any evidence the travel restriction, masking and testing policy were impacting his practice of his religion, and he was still able to perform the essential duties of his job without the accommodation. (*Id*.).

Plaintiff then filed an official EEO Complaint, claiming discrimination against him based on his religious beliefs as a Roman Catholic. (*Id*. at 12–17). Plaintiff claimed that, because of his unvaccinated status, he is required to do more at his job than his teammates. (*Id*. at 15). He mentioned that he was required to wear a mask and take COVID-19 tests, which he described as "wearing a symbol of the badge of discrimination all over [his] face." (*Id*.). He further claimed that the Corps took travel opportunities from him because of his vaccination status. (*Id*. at 16). Furthermore, Plaintiff claimed the Corps hired a temporary employee tasked with taking over Plaintiff's assignments and

---

[2] The period in which Plaintiff claims his exemption request was being ignored coincides with the period of time when the Southern District of Texas issued its nationwide injunction on the vaccine mandate, which included taking and reviewing exemption requests. (*See* Doc. # 12 at 5–6).

[3] Plaintiff's initial email to Ernest Drott mentioned only to his October 2021 religious exemption request. However, in that email and in later correspondence, Plaintiff repeatedly stated he was looking for a "reasonable accommodation request" of his religious beliefs, where he sought to remove his vaccination requirement and any other restrictions placed on all unvaccinated individuals, such as wearing a mask, limiting travel and taking COVID-19 tests. (Doc. # 12-3 at 7–8). In this action, Plaintiff makes no mention of a wished-for accommodation like he had in previous administrative proceedings.

3

required Plaintiff to train the new employee. (*Id*). All this, Plaintiff claims, caused his morale and attention to suffer, which made Plaintiff "not . . . able to compete with the employee [he] was a year ago, much less a peer who has an additional 6-months of experience." (*Id*.). He finally claimed that his superiors told him on a daily basis that they were going to fire him. (*Id*.).

Plaintiff's EEO Complaint was denied by the Department of the Army ("Army") on September 6, 2022. (*Id*. at 18). The decision stated that Plaintiff's Complaint failed to state a claim because Plaintiff alleged discrimination on the basis of vaccination status as opposed to religious beliefs, and that Plaintiff failed to allege any present harm or loss with respect to his employment. (*Id*. at 19).

Plaintiff next appealed his case to the Equal Employment Opportunity Commission ("EEOC"). (*Id*. at 24). The EEOC ultimately affirmed the denial of Plaintiff's Complaint, determining that Corps policies never conflicted with Plaintiff's practice of his religion. (*Id*. at 26). The EEOC determined that a fair reading of Plaintiff's statements and complaints in the record showed that he believed that he was being treated differently because of his vaccination status, as opposed to his religion. (*Id*.). It further affirmed the Army's finding that Plaintiff had not pled any cognizable harm or loss to his employment status resulting from his decision not to get vaccinated. (*Id*. at 27). Finally, the EEOC found that Plaintiff's complaints of a hostile work environment were not sufficient to alter the conditions of his employment. (*Id*.).

Plaintiff brought this suit on February 12, 2025.[4] (Doc. # 1). Defendant filed his Motion to Dismiss on May 28, 2025. (Doc. # 12). Plaintiff filed his Response on June 18,

---

[4] On April 25, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Daniel P. Driscoll was substituted for Mark Averill as the Defendant in this case. (Doc. # 11).

2025 (Doc. # 13), and Defendant filed his Reply to Plaintiff's Response on July 2, 2025. (Doc. # 14).

### III.    ANALYSIS

#### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is deemed facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is deemed to lack facial plausibility where "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In addressing a motion to dismiss under Rule 12(b)(6), a district court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief. *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

### B. Title VII of the Civil Rights Act

Title VII of the Civil Rights Act of 1964 provides employees protection against discrimination by their employers. Specifically, Title VII protects employees against being hired, fired, deprived of employment opportunities, or otherwise discriminated against because of said employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). "Religion" as defined under Title VII extends to all aspects of religious observance, practice, and belief. 42 U.S.C. § 2000e(j).

In this case, Plaintiff broadly makes three claims under Title VII. He claims he suffered workplace harassment, employment discrimination and a hostile work environment because he is unvaccinated, which Plaintiff maintains is dictated by his Roman Catholic beliefs. (Doc. # 1). The Court will analyze Plaintiff's claims in turn.

#### *1. Hostile Work Environment and Religious Workplace Harassment*

Because the Sixth Circuit has commonly linked claims of religious workplace discrimination to a hostile work environment, the Court will address Plaintiff's first and third claims together as a claim of a hostile work environment created by religious harassment. Plaintiff claims that through its enforcement of the vaccine mandate, the Corps and its employees harassed Plaintiff based on his religious beliefs, thereby creating a hostile work environment for Plaintiff. (*Id*. ¶¶ 39, 51). Plaintiff specifically alleges that the Corps rescinded his ability to travel because Plaintiff was not vaccinated, and that Plaintiff's coworkers "openly show[ed] frustration" toward Plaintiff for not being able to travel. (*Id*. ¶¶ 32, 38). Plaintiff claims his superiors and peers tried to convince him to get vaccinated. (*Id*. ¶ 39). Additionally, Plaintiff claims that President Biden's comments about unvaccinated employees constituted a "continued barrage" on his sincerely-held

6

religious beliefs that made his workplace hostile. (*Id*. ¶¶ 55, 69). Finally, Plaintiff claims his superiors at the Corps informed him on a daily basis that he was going to be fired and that the Corps hired a replacement employee that it required Plaintiff to train, which he claims subjected him to humiliation and anxiety. (*Id*. ¶¶ 57–62). Plaintiff claims this treatment results in a hostile work environment by the Corps. (*Id*. ¶ 69).

A hostile work environment exists under Title VII when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The elements and burden of proof for hostile work environment cases are the same, regardless of the context in which the discrimination arises*. Crawford v. Medina General Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996).

At the motion-to-dismiss stage, a plaintiff must allege that "[his] workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe and pervasive to alter the conditions of [his] employment and create an abusive working environment'" to effectively plead a hostile work environment claim under Title VII. *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). When determining whether a hostile work environment claim exists, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The Supreme Court has further outlined that

"'simple teasing,' offhand comments, and isolated incidents . . . will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Finally, the complained-of conduct must be objectively hostile and/or abusive, and the victim must subjectively regard the environment as abusive. *Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291, 296 (6th Cir. 2015).

Here, Plaintiff's allegations as pled do not make the required showing to prove a hostile work environment. Plaintiff identified that his decision not to get vaccinated stems from his Roman Catholic beliefs. (Doc. # 1 ¶ 10). Because Title VII's definition of religion extends to all aspects of religious observance, practice or belief, Plaintiff's decision not to take the COVID-19 vaccine—which he objects to because of his religious beliefs—is considered an extension of his Roman Catholic religious practice, thereby entitling him to membership in a protected class. *See Savel v. MetroHealth System*, 96 F.4th 932, 944 (6th Cir. 2024) (concluding that plaintiffs who did not get the COVID-19 vaccine on account of their religion reasonably pled they were members of Title VII-protected class at the motion to dismiss stage).

However, Plaintiff's alleged mistreatment is based on his vaccination status, not his religious beliefs. Plaintiff alleges he suffered religious harassment in four distinct ways: (1) by not being allowed to travel because of his vaccination status; (2) by having coworkers attempt to convince him to get vaccinated; (3) by having to train a "replacement" at work; and (4) by being told by his superiors he would be fired. (Doc. # 1). The Court will now analyze each of these allegations as Plaintiff has made them.

8

First, Plaintiff alleges the Corps asked him, as part of his usual employment, to travel. (*Id*. ¶ 31). However, in the next paragraph, Plaintiff admits that the Corps "rescinded the request based on [his] vaccination status." (*Id*. ¶ 31). Additionally, Plaintiff admits the Corps' efforts to enforce the vaccine mandate led to the elimination of his work-related travel. (*Id*. ¶ 30). In pleading this, Plaintiff unravels one of his own arguments by stating that the Corps' actions were taken to comply with a national policy, as opposed to being taken to attack him personally because of his religious beliefs. Further, at no point in his Complaint does Plaintiff come close to alleging the Corps rescinded its travel request *because* he was Roman Catholic. At this stage, without an allegation that the Corps acted with some impetus other than enforcement of its national practice in mind, Plaintiff's first claim falls short of the requisite standard.

Next, Plaintiff's coworkers' attempts to convince him to get vaccinated do not create a hostile work environment. *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 484 (6th Cir. 2020). Plaintiff alleges that his colleagues tried to get him to get vaccinated because they "got frustrated seeing how long it had been since [Plaintiff] had traveled for work," but he has not alleged any specific comments or conduct in his Complaint that would allow the Court to conclude those attempts made a hostile work environment. Furthermore, there is no indication that any of the harassment Plaintiff received was based on his Roman Catholic beliefs and not his vaccination status. There is simply not enough in Plaintiff's Complaint to demonstrate that this conduct rose to the level of "severe and pervasive" religious discrimination that would allow a claim to go forward. *Khalaf*, 973 F.3d at 484 ("The 'conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [protected status].'") (quoting *Wasek v.*

9

*Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012)). As pled, the Court cannot conclude Plaintiff suffered from harassment for anything other than his vaccination status, which is not protected under Title VII.

Finally, Plaintiff does not allege facts that allow the Court to conclude that the Corps hired his replacement and threatened to fire him because of his religious views. Plaintiff's only allegations regarding this treatment is that the Corps hired his replacement "solely based on [Plaintiff's unvaccinated] status." (Doc. 1 ¶ 59). He also claims that the "Corps informed [Plaintiff] on a daily basis that Corps was going to fire [Plaintiff]." (*Id.* ¶ 57). With those being the only pled facts about this aspect of his treatment, there is not enough of a factual basis to conclude these actions constituted religious harassment because Plaintiff does not allege any facts to indicate this treatment was *because of* his religious beliefs or practice. While he claims the Corps hired his replacement because of his vaccination status, he does not provide any specific facts to substantiate that claim. He also does not indicate why the Corps told him it was going to fire him. While the Court understands that any employee would not enjoy being told they were going to be fired, Plaintiff's bare claims without any specific factual backing do not plausibly indicate he was going to be fired because he was a Roman Catholic who did not wish to get the COVID-19 vaccine. Without more, these claims are exactly the kinds of "naked assertion[s] devoid of further factual enhancement" that are not actionable. *Iqbal*, 556 U.S. at 678. Because Plaintiff did not plead any facts that would allow this Court to conclude he was the subject of a hostile work environment because of his religion, this claim must be **dismissed**.

### *2.   Employment Discrimination*

Plaintiff's other claim is that the Corps subjected him to discipline as a result of his "devotion to his [unvaccinated] status, dictated by sincerely-held religious beliefs." (Doc. # 1 ¶ 42). He claims that the Corps required more from him than his teammates by requiring him to undergo regular COVID-19 tests and wear a face mask, which subjected him to a loss of professional opportunities, undue accommodation procedures, and "a culture of harassment and ridicule because of [his] disfavored religious beliefs." (*Id*. ¶ 44). He claims he is unable to compete with the employee he once was because of these restrictions. (*Id*. ¶ 47). Plaintiff contends this treatment makes up a "pattern of behavior constituting employment discrimination." (*Id*. ¶ 51).

The Supreme Court recognizes two broad categories of Title VII religious discrimination claims—disparate-treatment claims and disparate-impact claims. *See E.E.O.C v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). Additionally, the Sixth Circuit recognizes two kinds of disparate-treatment cases a plaintiff can bring, which are known as general disparate treatment claims and failure-to-accommodate claims. *Sturgill v. Am. Red Cross*, 114 F.4th 803, 811 (6th Cir. 2024). Both types of cases require different prima facie showings. *See Bilyeu v. UT-Battelle, LLC*, 154 F.4th 396, 403 (6th Cir. 2025) (addressing the different standards of review for plaintiff's disparate treatment and failure to accommodate claims). However, Title VII cases do not require prima facie showings at the motion-to-dismiss stage. *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1060 (6th Cir. 2022) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) for the proposition that *McDonnell Douglas* is an evidentiary standard, not a pleading requirement). Here, Plaintiff does not particularly allege one kind of religious

11

discrimination.  Given his lack of specificity, the Court will analyze Plaintiff's Complaint under both disparate treatment and failure-to-accommodate frameworks.

At the motion-to-dismiss stage, plaintiffs are not required to plead a prima facie case of discrimination consistent with the framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*.  *Savel*, 96 F.4th at 943 (6th Cir. 2024).  "If a reasonable court can draw the necessary inference [of discrimination] from the factual material stated in the complaint, the plausibility standard has been satisfied."  *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012).  Thus, if a complaint pleads factual content from which the Court can draw a reasonable inference, using its judicial experience and common sense, that a defendant-employer discriminated against a plaintiff *because of* his or her protected status, the complaint satisfies the requisite pleading standard for the case to continue.  *Id*. (emphasis in original).

At this stage, even without having to prove prima facie discrimination, Plaintiff's discrimination claim must fail because he has not plausibly alleged that the Corps discriminated against him for his religious beliefs.  Indeed, in his Complaint, Plaintiff admits he was subjected to discipline *due to his devotion to his unvaccinated status*.  (Doc. # 1 ¶ 42).  While he claims his unvaccinated status is driven by his religious beliefs, he pleads no facts that allow the Court to conclude any of the alleged discrimination he suffered was because of those religious beliefs.  *Savel*, 96 F.4th at 943.  In fact, the "more" that Claimant alleges he is required to do—masking, testing, losing professional opportunities—were part of national guidelines the federal government required of unvaccinated employees.  (*Id*. at ¶ 44; *see also* Doc. # 12-1 at 22–23).  As it were, Plaintiff's Complaint alleges that the Corps required him to take actions to comply with its

12

policy for unvaccinated employees. (Doc. # 1 ¶ 43). Unlike *Savel*, where the Sixth Circuit determined the plaintiffs had stated a plausible claim detailing a "specific event" where they were "treated differently" than their nonreligious counterparts, Plaintiff here does not allege any specific instances where the Corps treated him differently than those who were unvaccinated for nonreligious reasons. *Savel*, 96 F.4th at 944. Without a more concrete allegation that the disparate, discriminatory treatment was specific to Plaintiff, the Court's judicial experience and common sense leads it to the conclusion that the Corps' treatment of Plaintiff was not based on his religion and was instead based on his vaccination status. *Keys*, 684 F.3d at 610.

Additionally, Plaintiff does not plausibly allege a failure-to-accommodate claim. "The heart of the failure-to-accommodate claim is that an employer discharges (or otherwise discriminates against) an employee for failing a job-related requirement instead of abiding by its 'statutory obligation to make reasonable accommodation for the religious observances' of its employees." *Savel*, 96 F.4th at 943–44. (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1997)).

Here, Plaintiff does not allege he was subject to discharge or discipline as a result of his religious beliefs. Indeed, Plaintiff does allege he was subjected to discipline, but he does not specifically describe what the discipline is. (Doc. # 1 ¶ 42). He later alleges that the Corps "require[d] more" from him than it did from his teammates, but the Court is not under the impression that wearing a mask and undergoing daily COVID-19 tests were meant to be disciplinary measures. (*Id*. ¶¶ 45–46; *see also* Doc. # 12-1 at 22–23). And Plaintiff does not specifically allege they were. Further, Plaintiff does not allege he was fired, suspended, demoted, or fined for failing to get vaccinated in accordance with his

13

religious beliefs.  *See Savel*, 96 F.4th at 944 (ruling that plaintiffs' claims that they were forced to resign because they would not get vaccinated constituted a plausible claim of failure to accommodate); *Sturgill*, 114 F.4th at 810–11 (holding plaintiff plausibly alleged her employer failed to accommodate her religious beliefs by firing her for refusing the COVID-19 vaccine).

The Court is sympathetic to the additional stress Plaintiff alleges he was subject to in this case.  But without more specific allegations of how he was disciplined or how he was subject to a negative employment action, and additionally how that discipline was taken because of his religious views, the Court cannot allow Plaintiff's case to continue on these implausible claims.  As such, Plaintiff's claims of employment discrimination must be **dismissed**.

### IV.    CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)    Defendant's Motion to Dismiss (Doc. # 12) is **GRANTED**;

(2)    This matter is **STRICKEN** from the Court's active docket; and

(3)    A **Judgment** in favor of **Defendant** will be entered contemporaneously herewith.

This 26th day of November, 2025.



Signed By:
*David L. Bunning*   DB
Chief United States District Judge

G:Judge-DLB\DATA\ORDERS\Cov2025\25-23 MOO re MTD.docx